# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:19-CV-195-RJC-DCK

| | | |
|---|---|---|
| SOFTWARE PRICING PARTNERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| JAMES H. GEISMAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction" (Document No. 18) and "Defendant's Motion To Dismiss For Failure To State A Claim" (Document No. 20). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motion to dismiss for lack of personal jurisdiction be <u>granted</u>, and that the motion to dismiss for failure to state a claim be <u>denied as moot</u>.

## I. BACKGROUND

Software Pricing Partners, LLC ("Plaintiff" or "SPP") initiated this action with the filing of its "Complaint" (Document No. 1) on April 19, 2019. Plaintiff asserts claims against James H. Geisman ("Defendant" or "Geisman") for: (1) breach of Member Exit Agreement ("MEA"); (2) trade secret misappropriation under North Carolina Trade Secrets Protection Act, N.C.Gen.Stat. §§ 66-152 *et seq*. ("TSPA") and common law; (3) trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"); and (4) unfair and deceptive trade practices in violation of N.C.Gen.Stat. § 75-1.1. (Document No. 1, pp. 23-27). <u>See also</u> (Document No. 1-2).

According to the Complaint, SPP is a limited liability company organized and existing under the laws of the State of North Carolina, with a principal place of business in Charlotte, North Carolina, and Defendant is a citizen of the State of Massachusetts. (Document No. 1, p. 1). Plaintiff contends that Defendant is subject to the jurisdiction of this Court based on sufficient minimum contacts, including: (1) executing SPP's Operating Agreement in North Carolina; and (2) being a founding member of SPP, which was organized, registered, and is located in North Carolina. (Document No. 1, p. 2).

Plaintiff notes that the parties negotiated the Member Exit Agreement ("MEA") (Document No. 1-2) that was executed by Geisman, a resident of Massachusetts, and Chris Mele ("Mele"), a resident of North Carolina, on July 15, 2018. (Document No. 1, p. 2) (citing Document No. 1-2). Geisman and Mele were parties to SPP's Operating Agreement dated June 15, 2015. (Document No. 1-2, p. 2). Plaintiff now contends that Defendant Geisman violated the MEA by retaining copies of SPP's confidential information and trade secrets, and by disclosing SPP's confidential information and trade secrets and using it to compete with SPP. (Document No. 1, p. 3).

"Plaintiff's Motion For Preliminary Injunction" (Document No. 4) was filed on May 14, 2019, and the Honorable Robert J. Conrad, Jr. held a hearing on June 11, 2019.

The pending "Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction" (Document No. 18) and "Defendant's Motion To Dismiss For Failure To State A Claim" (Document No. 20) were filed on June 10 and June 14, 2019.

On August 7, 2019, Judge Conrad issued an "Order" (Document No. 32) granting in part and denying in part the "…Motion For Preliminary Injunction" (Document No. 4). In that decision, Judge Conrad noted the pending motion to dismiss for lack of personal jurisdiction and declined to reach the merits of that question. (Document No. 32, p. 1, n. 1).

The pending motions to dismiss have been fully briefed and are now ripe for review and a recommended disposition to Judge Conrad. <u>See</u> (Document Nos. 19, 26, and 27).

## II. STANDARD OF REVIEW

A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. <u>New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.</u>, 416 F.3d 290, 294 (4th Cir. 2005); <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989).

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of evidence. . . . [W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

<u>Combs</u>, 886 F.2d at 676. (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." <u>Barclays Leasing, Inc. v. National Business Systems, Inc.</u>, 750 F.Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." <u>IMO Industries, Inc. v. Seim S.R.L.</u>, 3:05-CV-420-MU, 2006 WL 3780422 at *1 (W.D.N.C. December 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant . . . [and] factual conflicts must be resolved in favor of the party asserting jurisdiction...." <u>Id.</u>

Questions of jurisdiction are answered by a two-step analysis: (1) the court must determine whether the North Carolina long-arm statute confers personal jurisdiction; and (2) the court must

3

determine whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. Gen Latex & Chem. Corp. v. Phoenix Med. Tech., 765 F.Supp. 1246, 1248-49 (W.D.N.C. 1991). The statutory inquiry merges with the constitutional inquiry, essentially becoming one. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir.1997).

There are two varieties of personal jurisdiction, general and specific. General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state. Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. Helicopterous Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n. 8 (1984). When a controversy is related to or "arises out of" a defendant's contacts with the forum, the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction. Id. (citing Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The Fourth Circuit has "synthesized the requirements of the Due Process Clause for asserting specific jurisdiction into a three-part test [considering] . . . '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" New Wellington, 416 F.3d at 294-95 (citing Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004).

### III. DISCUSSION

In the introductory paragraphs of Defendant Geisman's motion to dismiss for lack of personal jurisdiction, he notes that he is a 76-year-old resident of Massachusetts who has lived in

Massachusetts for 49 of the last 55 years and has never lived in North Carolina. (Document No. 19, p. 1). Defendant further states that there are no allegations that he: acquired trade secrets in North Carolina, disclosed alleged trade secrets in North Carolina, solicited clients in North Carolina, or competed in any way with Plaintiff in North Carolina. Id.

The core of Defendant's argument for dismissal is that this dispute does not arise from his contacts with North Carolina – "none of the conduct at issue occurred in or was targeted at North Carolina." (Document No. 19, p. 4). Defendant asserts that

> Because the MEA waived all claims – known or unknown – against Mr. Geisman, the only conduct for which Mr. Geisman can be liable is that occurring after July 15, 2018. As a result, this dispute concerns only Mr. Geisman's post-MEA conduct. If all of Mr. Geisman's post-MEA conduct occurred outside North Carolina, this dispute cannot arise from his contact with North Carolina and the Court cannot exercise jurisdiction.

(Document No. 19, p. 5). See also (Document No. 1-2, pp. 4-5). Defendant further asserts the MEA "was designed to end all connection between Mr. Geisman and the state." (Document No. 19, p. 6).

Defendant identifies recent decisions from this Court and Maryland, which he contends dictate this Court lacks personal jurisdiction here. (Document No. 19, pp. 4-7) (citing Joseph v. Joseph, 3:18-CV-003-MOC-DCK, 2018 WL 4137094 (W.D.N.C. July 9, 2018) adopted by 2018 WL 4110545 (W.D.N.C. Aug. 29, 2018) and Element Fleet Corp. v. Quimby, 2019 WL 1293275 (D.Md. March 19, 2019)). Defendant contends that as in Joseph and Quimby, all the relevant allegations occurred outside North Carolina. Id. In addition, Defendant notes that "mere injury to a forum resident is not a sufficient connection to the forum." (Document No. 19, p. 6) (quoting Walden v. Fiore, 571 U.S. 277, 290 (2014)).

Defendant concludes that under the specific jurisdiction standard, he could not reasonably expect to be haled to North Carolina for pre-MEA conduct when the MEA released him from that conduct in its entirety and the dispute "exclusively concerns post-MEA conduct occurring outside North Carolina. (Document No. 19, p. 8).

In response, Plaintiff SPP first argues that Geisman falsely contends "the MEA release provision 'waived all claims' against Geisman . . . given that the release expressly does not include any claims arising out of the breach of the MEA." (Document No. 26) p. 12) (quoting Document No. 19, p. 5). Moreover, Plaintiff contends that Geisman "has substantial, continuous contacts with North Carolina, both before and after the MEA was signed, showing that he should have reasonably anticipated being haled into court here." (Document No. 26, p. 13).

In support of its arguments, Plaintiff includes a list of contacts Geisman allegedly made with North Carolina that show he purposefully availed himself of the state. (Document No. 26, pp. 14-15). A few of these involve post-MEA conduct, including sending emails into North Carolina, attempting to get SPP files, and trying to divert potential clients from his SPP email to his personal account. Id. Plaintiff suggests that Defendant's "conduct rises to the level of 'activities directed to the forum,'" where he had "significant conversations" with SPP regarding not taking anything from SPP when he exited. (Document No. 26, p. 15).

Plaintiff also argues that Defendant's reliance on Joseph and Quimby is misplaced. (Document No. 26, pp. 16-17). Unlike Joseph, Plaintiff contends this case involved Geisman sending communications into North Carolina while negotiating a contract and allegedly taking property owned by SPP in North Carolina. (Document No. 26, p. 16). Plaintiff further contends that Quimby is distinguishable, among other reasons, because there was no injury in that case, and no indication that the agreements at issue in that case were negotiated. (Document No. 26, p. 17).

6

In reply, Defendant notes that Plaintiff argues all of Geisman's contacts since 2015, related to Plaintiff, are relevant for personal jurisdiction. (Document No. 27, p. 2). Defendant avers that "Plaintiff is simply incorrect." Id. "The Supreme Court mandates that specific jurisdiction is absent when the claims do not arise from contacts with the forum." Id. Defendant argues that he could not have breached the MEA before it existed, or misappropriated trade secrets before July 15, 2018 – a time when, as co-owner, he was entitled and expected to have access to such information. Id.

Defendant argues that "the essential inquiry" is whether the claims against him arise out of his contact with this State. (Document No. 27, p. 3). He then asserts that while it is indisputable that he worked in and visited this State in the past, his "post-MEA contacts – the exclusive basis for Plaintiff's claims – cannot subject Mr. Geisman to specific jurisdiction." Id. Relying on Supreme Court cases, Defendant notes that "the suit must arise from the defendant's contacts with the *forum*." Id. (citing Bristol-Myers Squibb. Co. v. Superior Court of California, San Francisco Cty., 137 S.Ct. 1773, 1780 (2017) (quoting Goodyear Dunlop Tire Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011)).

In addition, Defendant acknowledges that the MEA has a North Carolina choice-of-law provision, but suggests the exclusion of a forum selection provision was purposeful.

> This exclusion speaks volumes. Contrary to Plaintiff's assertion that *including* a choice-of-law provision suggests that Mr. Geisman "knew he was binding himself to an LLC in North Carolina" (*id.* at p. 10), *excluding* a forum selection or consent-to-jurisdiction clause suggests otherwise. Indeed, the entire purpose of the MEA was to *extricate* Mr. Geisman from a North Carolina LLC. Therefore, the exclusion of a forum selection or consent-to-jurisdiction clause in the MEA is a far better indicator that Mr. Geisman did not intend or expect to be subject to jurisdiction in North Carolina, and he certainly did not consent to jurisdiction in North Carolina merely by agreeing to a choice-of-law provision.

7

(Document No. 27, p. 5).

Next, Defendant argues that his phone calls and emails do not constitute sufficient contacts. (Document No. 27, p. 6) (quoting Springs v. Ally Fin., Inc., No. 3:10-CV-311-RJC-DCK, 2010 WL 4818669, at *10 (W.D.N.C. Oct. 14, 2010) (quoting Ritz Camera Centers, Inc. v. Wentling Camera Shops, Inc., *et al.*, 982 F.Supp. 350, 353 (D. Md. 1997)), adopted by, 2010 WL 4823242 (W.D.N.C. Nov. 19, 2010) ("'telephonic (voice and facsimile) exchanges and mail correspondence from [outside] the state . . . do not provide a basis for the exercise of personal jurisdiction.'")). Moreover, Plaintiff only alleges two phone calls between Geisman and SPP after the MEA. (Document No. 27, pp. 7-8)(citing Document No. 1, ¶¶ 58-59).

To the extent Plaintiff alleges that Defendant attempted to access SPP's files, Defendant argues that information was stored on a Google Drive. (Document No. 27, p. 9). Defendant asserts that the Google files/data are stored "across many computers in different locations." Id. (citation omitted). Defendant concludes this cannot constitute a contact purposefully directed at North Carolina. (Document No. 27, p. 10).

In short, the undersigned finds Defendant's arguments and authority to be thorough and compelling. Notably, a very recent decision by the Fourth Circuit, albeit with distinctly different underlying facts, re-affirms the familiar standard of review for personal jurisdiction.

> The nature and quantity of forum-state contacts required depends on whether the case involves the exercise of "specific" or "general" jurisdiction. General jurisdiction permits the court to hear any and all claims against the defendant, regardless of where the claims arose or the plaintiff's citizenship. General jurisdiction may be exercised when the defendant has contacts with the forum jurisdiction that are "so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (internal quotation marks and alteration omitted). If the defendant does not have sufficient contacts to be at home in the forum, **the court may exercise specific jurisdiction if the defendant has continuous and**

8

> **systematic contacts with the forum state and the claims at issue arise from those contacts with the forum state**. *See id.* at 126-27, 134 S.Ct. 746.

Fidrych v. Marriott Int'l, Inc.,  2020 WL 986674, at *4 (4th Cir. Mar. 2, 2020) (emphasis added).

In this case, Plaintiff does not appear to assert general jurisdiction, but is properly focused on consideration of specific jurisdiction and "defendant's conduct and connection with the forum State."  (Document No. 26, p. 10) (quoting Burger King v. Rudzewicz, 471 U.S. 462, 474 (1984)). Also quoting Burger King, Fidrych further states:

> For the exercise of specific jurisdiction to be permissible, "the defendant [must have] **purposefully directed his activities at residents of the forum**." *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174 (internal quotation marks omitted).  "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 475, 105 S.Ct. 2174

Fidrych, 2020 WL 986674, at *11 (emphasis added).

Applying these familiar standards, including caselaw relied on by both sides, the undersigned is persuaded that Geisman's case-related contacts are too tenuous and too insubstantial to support the exercise of specific jurisdiction.  The undersigned agrees that the claims in the Complaint arise out of alleged violations of the MEA, and that those allegations do not sufficiently show that Geisman purposefully directed his activities at residents of the forum during the relevant time period.  Instead, the Complaint asserts that Defendant attempted to access SPP's files in October 2018, and that later in 2018 and/or early 2019, he engaged in communications with persons in other states, that may have violated the MEA.  See (Document No. 1, pp. 14, 17-20);  see also (Document No. 26, pp. 7-10).  Few if any of the allegations or claims against Defendant Geisman arise out of contacts with this forum.  Geisman's alleged MEA

violations seem to involve activity in Massachusetts, and/or with residents of states other than North Carolina.

Based on the foregoing, the undersigned will respectfully recommend that "Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction" (Document No. 18) be granted. Because the undersigned finds that this matter should be dismissed pursuant to Fed.R.Civ.P. 12(b)(2), this Memorandum And Recommendation will further recommend that the 12(b)(6) motion be denied as moot. The parties have not requested, and the undersigned expresses no opinion, regarding whether amendment of the pleadings or transfer to another district is appropriate here.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction" (Document No. 18) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that "Defendant's Motion To Dismiss For Failure To State A Claim" (Document No. 20) be **DENIED AS MOOT**.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude

the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue

in a magistrate judge's report, a party must object to the finding or recommendation on that issue

with sufficient specificity so as reasonably to alert the district court of the true ground for the

objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette,

478 F.3d 616, 622 (4th Cir. 2007)).

      **IT IS SO RECOMMENDED**.

Signed: March 3, 2020

David C. Keesler
United States Magistrate Judge