UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-00195-RJC-DCK

| | |
|---|---|
| SOFTWARE PRICING PARTNERS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| JAMES H. GEISMAN, | ) **ORDER** ) |
| Defendant. | ) ) ) ) |

**THIS MATTER** is before the Court on Plaintiff's Motion for Attorneys' Fees and Expenses (Doc. No. 92).

**I.   BACKGROUND**

Plaintiff Software Pricing Partners, LLC ("SPP") originally filed this action on April 19, 2019, alleging that Defendant James Geisman ("Geisman"), a former SPP partner, misappropriated trade secrets, breached his contracts with SPP, and engaged in unfair and deceptive trade practices. (Doc. No. 1). After an order from this Court dismissing some of SPP's claims and streamlining others, (Doc. No. 40), SPP filed an Amended Complaint on May 5, 2021, adding claims for copyright infringement to its existing claims for trade secret misappropriation, breach of contract, and unfair and deceptive trade practices. (Doc. No. 57).

During discovery, Geisman filed a Chapter 13 bankruptcy case in the United States Bankruptcy Court for the District of Massachusetts, and that case stayed this action until SPP received relief from the automatic stay to continue litigating this case. Thereafter, the Court held a status conference at which Geisman indicated he is "unable to continue to defend against the allegations in this lawsuit" and would agree to an entry of default "to be proactive . . . in lieu of

1

becoming an unresponsive party." (Doc. No. 81). The Clerk of Court entered a default on April 18, 2022, after which SPP filed its Motion for Default Judgment requesting a permanent injunction, damages, and attorneys' fees. (Doc. Nos. 83, 85). This Court granted SPP's Motion for Default Judgment, permanently enjoining Geisman from using SPP's intellectual property, disclosing confidential information, or using or disclosing certain files that Geisman took from SPP. (Doc. No. 90). The Court also awarded SPP "$779,114.60, which includes a $253,038.20 reasonable royalty, treble damages, and $20,000 statutory damages for two violations of the Digital Millennium Copyright Act, plus reasonable attorneys' fees and costs." (*Id.*).

In light of the attorneys' fees award, the Court directed SPP to "submit an accounting of reasonable attorneys' fees and costs within fourteen (14) days of this Order," (*id.*), and SPP timely submitted such an accounting. (Doc. No. 92-1).

## II.    ANALYSIS

Under the DTSA, a defendant who willfully and maliciously misappropriated trade secrets can be liable for attorneys' fees. *Herrmann Int'l, Inc. v. Herrmann Int'l Eur.*, No. 1:17-cv-00073-MR, 2021 WL 861712, at *24 (W.D.N.C. Mar. 8, 2021). "Willful means intentionally . . . [m]alicious means an action taken in a manner which evidences a reckless and wonton disregard of the plaintiff's rights." *Bridgetree, Inc. v. Red F Mktg. LLC*, No. 3:10-cv-00228-FDW-DSC, 2013 WL 443698, at *19 (W.D.N.C. Feb. 5, 2013) (internal quotation marks and citations omitted). In granting default judgment, this Court previously found that Geisman "willfully and maliciously misappropriated SPP's trade secrets." (Doc. No. 90).

Additionally, under the DMCA, the Court, in its discretion, may award reasonable attorneys' fees to the prevailing party. 17 U.S.C. § 1203(b)(5). "In deciding whether to award fees under the DMCA, the Court may consider the motive, reasonableness of the fee, deterrence and

compensation, and the ability of the nonmoving party to pay." *Dahn World Co., Ltd. v. Chung*, No. CIV. A. RWT06-2170, 2009 WL 277603, at *2 (D. Md. Feb. 5, 2009) (citing *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 234 (4th Cir. 1993)).

### 1. Reasonable Attorneys' Fees

"The proper calculation of an attorney's fee award involves a three-step process. First, the court must 'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.'" *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), *as amended* (Jan. 23, 2014) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). "Next, the court must 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones,'" (*id.*) (quoting *Robinson*, 560 F.3d at 244), and finally "the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'"

To determine a reasonable rate and number of hours expended (the "lodestar figure"), this Court is bound to apply the factors originally set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) and later adopted by the Fourth Circuit:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*See Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978); *see also McAfee*, 738 F.3d at 88 n.5. Once calculated, "[t]he Supreme Court has indulged a 'strong presumption' that the lodestar number represents a reasonable attorney's fee." *McAfee*, 738 F.3d at 88–89 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)).

SPP seeks $950,402.91 in total fees and expenses: $807,351.50 in attorneys' fees for litigation leading up to the Court's grant of default judgment, $31,563.50 for attorneys' fees related to the Motion for Attorneys' Fees and Expenses itself, $108,036.91 for expert witness fees, and $3,451 for deposition-related expenses. (Doc. No. 92-1).

Though the *Johnson* factors and the Fourth Circuit's three-step process guide this Court, the process is not scientific—the "essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "Trial courts," therefore, "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*; *see also Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 521 (E.D.N.C. 2012), *aff'd*, 551 F. App'x 646 (4th Cir. 2014) (citing *Fox*, 563 U.S. at 838).

The first step of an attorneys' fees award requires analysis of each *Johnson* factor.

### (1) Time and labor expended

Counsel expended more than 2,000 hours in this action over years of litigation. According to SPP – and as confirmed by counsel's billing records, (Doc. No. 94-1) – various tasks included:

> (1) preparing and drafting of the complaint and its amendments, (2) preparing briefing and evidence for Plaintiff's Motion for Preliminary Injunction and related hearing [Doc. Nos. 4-5], (3) briefings associated with Defendant's Motion to Dismiss [Doc. Nos. 18-21], (4) meeting and conferring with counsel for Defendant, and letters and responses regarding discovery conferences and disputes, (5) responding to Defendant's interrogatories and requests for production (and reviewing documents for production), (6) reviewing *more than a million* documents from Defendant during discovery, (7) briefing for Plaintiff's Motion to Compel [Doc. No. 70], (8) work corresponding to Plaintiff's damages expert report, (9) work corresponding to Plaintiff's rebuttal report against Defendant's technical expert report, (10) preparation for and depositions of five fact witnesses and preparation for the deposition of Defendant, (11) drafting of nine subpoenas, and review of the third-party documents provided as a result of those subpoenas, (12) briefing regarding both parties' motions to strike expert reports [Doc. Nos. 59, 74-75], (13) drafting motions to seal in the case [Doc. Nos. 58, 69, 84], and (14) briefing Plaintiff's Motion for Default Judgment [Doc. No. 85].

(Doc. No. 92-1). Of these roughly 2,000 billed hours, SPP seeks fees for only 1,727.30 hours,

applying an approximate 15% discount "in order to simplify and streamline the granting of this Petition." (*Id.*). Excluding the roughly 4-month stay imposed in 2021, this litigation advanced steadily toward trial from February 2019 to August 2022, and counsel prepared accordingly. Having reviewed counsel's billing records and memoranda, the Court finds SPP's requested hours billed for litigation leading up to the default judgment (1727.30 hours) reasonable.

The Court also finds reasonable the hours expended by counsel's e-discovery team. This team managed extensive discovery productions, facilitated document review, and controlled privilege screenings, among other tasks. These tasks generated 100.9 billed hours in total over several years of litigation, and work performed by the e-discovery team reduced overall hours worked, both by reducing hours directly billed by attorneys on these tasks and by delegating certain tasks to the most efficient team members. Thus, the Court finds SPP's requested hours billed by e-discovery team (100.9 hours) reasonable.

Finally, SPP seeks fees for 65.3 hours of work related to the instant Motion for Attorneys' Fees. The Court finds this number of hours unreasonable and therefore awards only fifty percent of related fees. "Billing judgment is an important component in fee setting" and "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Thus, to address excessive fee requests, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1983) (internal quotations omitted). Here, some time entries billed to associates or partners included administrative tasks, which SPP itself noted are often more efficiently performed by support staff at lower rates. (Doc. No. 92-1). Moreover, while some time entries are modest, others strike the Court as excessive. Therefore, taking into account
5

the Court's "overall sense of [this] suit," and remembering the "essential goal in shifting fees is to do rough justice," *Fox*, 563 U.S. at 838, the Court finds 50% of the hours billed for the Motion for Attorneys' Fees reasonable, or 32.65 hours.

### (2) The novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; and (4) the attorney's opportunity costs in pressing the instant litigation

The Court groups these *Johnson* factors together as their analysis is straightforward. In analyzing the novelty of questions raised, the Court generally considers whether the issue is one of first impression. *Johnson*, 488 F.2d at 718. This case was not. In analyzing the skill required to perform the legal services rendered, the Court generally considers the attorneys' "work product, … preparation, and general ability before the court." (*Id.*). Here, counsel prepared adequately and executed each task skillfully. Finally, in analyzing counsel's opportunity costs in pursuing certain litigation, the Court generally considers "otherwise available business which is foreclosed" by participation in the instant litigation. (*Id.*). As partners and associates at a large law firm, "Plaintiff's counsel were necessarily unable to perform work for other clients while performing work on this case," (Doc. No. 92-1), and thus, this factor – along with factors two and three – requires no further downward departure from counsel's calculated fees.

### (5) The customary fee for like work

"The customary fee for similar work in the community should be considered. It is open knowledge that various types of legal work command differing scales of compensation." *Johnson*, 488 F.2d at 718. To aid the Court in determining the customary fee, "the burden rests with the fee applicant to establish the reasonableness of a requested rate. In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Plyler v. Evatt*,

6

902 F.2d 273, 277 (4th Cir. 1990). "[A]ffidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community" can constitute such satisfactory specific evidence. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009).

Counsel billed at several rates. The attorneys managing this case, J. Mark Wilson and Chandra Joy Duncan, billed hourly at $675-$775 and $325-$430, respectively. The e-discovery team billed hourly at three rates: $175-200 for paralegal Chelsea Trunk, $195-$215 for litigation support manager Matthew Hawkins, and $310 for litigation senior counsel Jamea Richardson.

In support of these rates, SPP provides ample information. First, SPP offers J. Mark Wilson's affidavit, in which he explains that all relevant rates are "counsel's normal, ordinary and customary rates for similar litigation and, in fact, reflect counsel's actual billing rates charged to Plaintiff for this lawsuit." (Doc. No. 92-2). SPP also offers the affidavits of two other Charlotte-area attorneys, one of whom acknowledged that the relevant billing rates are reasonable. (Doc. No. 92-4 (explaining the rates "are well within the prevailing market rates for litigators in Charlotte with similar specialization and experience during this time")); (Doc. No. 92-5 (explaining the rates are "within prevailing market rates and in line with what I would expect" for lawyers of their skill, experience, and reputation). The Court therefore finds these rates reasonable.

In support of the e-discovery team's rates, SPP offers J. Mark Wilson's affidavit, which notes that the requested rates are commiserate with others for support staff at Moore and Van Allen in Charlotte. SPP also directs the Court to the Laffey Matrix, which this Court has used in past instances to measure the reasonableness of staff billing rates. *See Dyer v. City of Gastonia*, Case No. 3:15-cv-00033-MOC-DCK, 2016 U.S. Dist. LEXIS 110839, at *10 (W.D.N.C. Aug. 19, 2016) ("Based on the … Laffey Matrix, the fees charged by plaintiffs' lawyers and paralegals are well

7

within the reasonable range for this type of work"). Each of the three hourly rates charged by the e-discovery team are near or within the Laffey Matrix's relevant ranges. (Doc. No. 92-8). Thus, in light of the Laffey Matrix, other relevant testimony, and the Court's sense of "rough justice," the Court finds these rates reasonable.

### (6) The attorney's expectations at the outset of the litigation; and (7) the time limitations imposed by the client or circumstances

In analyzing the attorney's expectations, courts consider whether an attorney offered a fixed or contingent fee at the outset of a case. Here, counsel billed hourly, offering neither a fixed nor a contingent fee. In considering the time limitations imposed, courts recognize that "[p]riority work that delays the lawyer's other legal work is entitled to some premium." *Johnson*, 488 F.2d at 718. SPP contends neither that counsel delayed other work to work on this case nor that counsel's work in this case should be entitled to a premium, and thus, this factor requires no further departure from SPP's calculated fees.

### (8) The amount in controversy and the results obtained

"[W]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Moreover, "the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." (*Id.*). Here, SPP represents that it "obtained the relief it requested," and thus, this factor requires no further downward departure from SPP's calculated fees.

Additionally, the Court takes this time to note that, while counsel seeks more in attorneys' fees than SPP was awarded in monetary damages (SPP was awarded $779,114.60 in monetary damages and counsel seeks $838,915 in cumulative attorneys' fees), the fee award need not be proportionate to the amount of damages a plaintiff recovers. *See Riverside v. Rivera*, 477 U.S. 561, 561 (1986); 9 West's Fed. Admin. Prac. § 11989.

**(9) The experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; and (11) the nature and length of the professional relationship between attorney and client**

An experienced attorney who specializes in a certain field may command a higher reasonable rate than would an unexperienced, unspecialized attorney. *See Johnson*, 488 F.2d at 718–19. Counsel's experience, reputation, and ability support their requested fees. (Doc. Nos. 92-2, 92-4, 92-5). SPP does not contend that the instant case is undesirable, but nonetheless, desirability is no reason for further downward departure from counsel's calculated fees. *See Johnson*, 488 F.2d at 719 (noting a court "can" consider this factor if counsel's work is "not pleasantly received by the community or his contemporaries").

In analyzing the nature and length of the professional relationship between an attorney and client, courts should note that "[a] lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office." *Id.* When this litigation arose, SPP was already a Moore & Van Allen client, albeit not for litigation matters. Thus, the Court finds that in light of the client's relationship with the firm and counsel's "write-off" of more than 15% of its overall billed hours, this factor requires no further departure from SPP's calculated fees. (Doc. No. 94-1).

**(12) Attorneys' fees awards in similar cases**

"The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit." *Johnson*, 488 F.2d at 719. SPP offers for comparison two cases from federal courts sitting North Carolina. *See Bridgetree, Inc. v. Red F Marketing, LLC*, Case No. 3:10-cv-00228-FDW-DSC, 2013 WL 443698, at *19-21 (W.D.N.C. Feb. 5, 2013) (ultimately awarding, in a text-only order, $1,002,186.41 in attorneys' fees in action for misappropriation of trade secrets, unfair and deceptive trade practices, and conversion); *Silicon*

9

*Knights, Inc. v. Epic Games*, 917 F. Supp. 2d 503, 521 (E.D.N.C. 2012) (awarding $2,091,722.83 in attorneys' fees in action for trade secret misappropriation, breach of contract action, and copyright infringement).

Though neither of the above cases presented the exact procedural scenario at issue here (which is unique, to be sure), these examples are sufficient – in each, the Court awarded counsel's full calculation of warranted fees. Accordingly, though this case ended in a default judgment rather than a jury trial, the Court considers the awards in *Bridgetree* and *Silicon Knights* instructive. Therefore, after reviewing awards in similar cases, the Court considers SPP's requested fees reasonable (excluding, as noted, half of counsel's requested fees related to the Motion for Attorneys' fees). *See also claims Philips Med. Sys. (Cleveland), Inc. v. Buan*, No. 19-CV-2648, 2023 WL 143200, at *10 (N.D. Ill. Jan. 10, 2023) (awarding attorneys' fees after default judgment in a trade secret action); *Solvay Specialty Polymers USA, LLC v. Zhenguo (Leo) Liu*, 331 F.R.D. 187, 193 (N.D. Ga. 2019) (same); *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 935 (D. Ariz. 2013) (same).

Therefore, applying the twelve *Johnson* factors, the Court will use counsel's requested rates to calculate a lodestar figure, multiplied by all hours billed for activities leading up to the Motion for Attorneys' Fees and half the hours billed on that motion itself.

Steps two and three demand no great analysis. Though SPP was unsuccessful on some of its original claims, including certain breaches of the Member Exit Agreement and trade secret misappropriation under North Carolina law and common law, SPP ultimately prevailed on other claims under the Member Exit Agreement and on its claims for trade secret misappropriation under federal law. The Court dismissed those unsuccessful claims on June 6, 2019, and up to that point, SPP's attorneys and staff spent 651.5 hours on all of SPP's claims. (Doc. No. 94-1). Though SPP

10

does not specify exactly how many hours were spent on unsuccessful claims,[1] applying even a draconian 30% reduction of those hours billed before June 6, 2019 (195.45 hours) results in less a reduction than SPP already proposed. (Doc. No. 94-1 (striking 322 billed hours)). Therefore, the Court finds that SPP's proposed reductions are sufficient to subtract fees for any hours spent on unsuccessful claims, especially in light of SPP's eventual victory on causes of action related to the Member Exit Agreement and trade secret misappropriation.

Step three is even simpler. SPP enjoys essentially complete success on its claims, holding both a permanent injunction against Geisman for the complained-of action and a judgment against him for nearly $800,000. Therefore, under the Fourth Circuit's three-step process, SPP is entitled to the full measure of its calculated attorneys' fees for activities leading up to this motion and to half its calculated attorneys' fees related to this motion.

**2. Reasonable Costs**

SPP requests $111,487.91 in costs incurred by two different methods: $108,036.91 for expert witness fees and $3,451 for deposition-related expenses. In its default judgment order, the Court awarded attorneys' fees and costs under both the Defend Trade Secrets Act ("DTSA") and the Digital Millennium Copyright Act ("DMCA"), (Doc. No. 90, at 23 (awarding attorneys' fees under both statutes)); (*id.* at 25 (awarding "reasonable attorneys' fees and costs")). While attorneys' fees are available under both statutes, only the DMCA allows recovery for costs. *See* Defend Trade Secrets Act, 18 U.S.C § 1836(b)(3)(D) ("In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may, if the trade secret was willfully and maliciously misappropriated, award reasonable attorney's fees to the prevailing

---

[1] The Court recognizes and commends the detailed and complete timekeeping entries submitted by Plaintiff's counsel. Though the entries therein are often thorough enough to show which claims the timekeeper worked on at certain times, some tasks simply resist an easy claim-by-claim split.

party") (cleaned up); Digital Millennium Copyright Act, 17 U.S.C. § 1203(b)(4)-(5) ("In an action brought under subsection (a), the court in its discretion may allow the recovery of costs by or against any party other than the United States or an officer thereof; [and] in its discretion may award reasonable attorney's fees to the prevailing party") (cleaned up).

### a. Expert Witness Fees

SPP seeks $108,036.91 in expert witness fees related to two expert witness reports. (Doc. No. 92-1). Those fees are unrecoverable. "The Copyright Act does not explicitly authorize the award of litigation expenses beyond the six categories specified in [28 U.S.C.] §§ 1821 and 1920, which do not authorize an award for expenses such as expert witness fees, e-discovery expenses, and jury consultant fees." *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 874 (2019). Though *Rimini St.* applies the Copyright Act's remedies provision, 17 U.S.C. § 505, rather than a similar provision in the Digital Millennium Copyright Act, 17 U.S.C. § 1203(b)(4), the Court's holding is instructive.

To begin, the corresponding sections are virtually identical. *See* 17 U.S.C. § 505 ("[T]he court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof"); 17 U.S.C. § 1203(b)(4) ([T]he court … in its discretion may allow the recovery of costs by or against any party other than the United States or an officer thereof"). This parallel language also stems from statutes with synonymous purposes – both the Copyright Act and the DMCA address copyright violations. Thus, without case law or any other interpretation to suggest otherwise, the Supreme Court's holding in *Rimini St.* prohibits this Court from awarding expert witness fees as costs under § 1203. *See Rimini St.*, 139 S. Ct. at 881 ("[T]he language in § 505 limits costs to only those specified in the general costs statute, [28 U.S.C.] §§ 1821 and 1920.").

12

### b. Deposition Expenses

SPP seeks $3,451 for deposition-related expenses. Because the general costs statute provides for such expenses, they are recoverable. *See* 28 U.S.C. § 1920(2) (addressing "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."); *see also Rimini St.*, 139 S. Ct. at 881 (limiting recoverable costs in copyright actions to those in §§ 1821 and 1920); *Silicon Knights*, 917 F. Supp. 2d at 511 (awarding deposition expenses under § 1920).

"When a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recording pursuant to Federal Rule of Civil Procedure 26(c), it is appropriate under section 1920 to award the cost of conducting the deposition in the manner noticed." *Id.* (quoting *Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460, 465 (11th Cir. 1996)). Here, SPP so noticed the depositions and Geisman did not object. (Doc. Nos. 92-1, 92-9). Finally, SPP notes that Geisman "required Plaintiff to conduct five fact depositions in the latter stages of discovery" to prove that certain statements and allegations were false. (Doc. No. 92-1). Such assertion is enough to show that the transcripts were "necessarily obtained for use in the case," and thus, SPP is entitled to its requested $3,451 for deposition-related expenses.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Attorneys' Fees and Expenses (Doc. No. 92) is **GRANTED IN PART** and **DENIED IN PART**. Specifically,

1. The Motion for Attorneys' Fees and Expenses (Doc. No. 92) is **GRANTED** as to Plaintiff's request for attorneys' fees. Defendant James H. Geisman is liable to Plaintiff Software Pricing Partners, LCC in the amount of **$823,133.25**, representing reasonable attorneys' fees incurred in this case.

2. The Motion for Attorneys' Fees and Expenses (Doc. No. 92) is **GRANTED** as to Plaintiff's request for deposition-related expenses. Defendant James H. Geisman is liable to Plaintiff Software Pricing Partners, LCC in the amount of **$3,451**, representing deposition expenses incurred in this case.

3. The Motion for Attorneys' Fees and Expenses (Doc. No. 92) is **DENIED** as to Plaintiff's request for expert witness fees.

Signed: May 15, 2023

Robert J. Conrad, Jr.
United States District Judge